No. 36,409

GEORGE J. HARRIS, *Appellee,* v. BECHTEL-DEMPSEY-PRICE and STANDARD ACCIDENT INSURANCE COMPANY, *Appellants.*

(164 P. 2d 89)

Opinion filed December 8, 1945.

*Frank L. Bates, Harry S. Roberts,* both of Kansas City, *Guy M. Cowgill, Arthur C. Popham* and *Sam Mandell,* all of Kansas City, Mo., were on the briefs for the appellants.

*Bernard L. Sheridan, L. Perry Bishop* and *J. Milton Sullivant,* all of Paola, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a workmen's compensation case in which claimant was given an award for additional compensation and for additional medical treatment. The legal questions argued are the sufficiency of the evidence to sustain the additional award, the authority of the court to give any award for additional medical treatment, and the sufficiency of the evidence to sustain the award made.

On September 16, 1943, claimant was carrying a bucket of hot tar which in some way became tilted so that a quantity of the tar spilled from the bucket onto his left wrist and forearm, causing a severe burn. It was stipulated that the relation of employer and employee existed between respondent and claimant; that they were operating under the workmen's compensation law; that the accident arose out of and in the course of employment, and that claimant's weekly wages were in excess of $30 per week. Respondent received prompt notice of claimant's injury and had its doctor treat him from September 16 to December 14, 1943, at a cost to respondent of $110. Respondent also paid compensation to claimant from September 24 to November 5, 1943, totaling $108. Claimant served his written claim for compensation upon respondent November 30 and filed it with the compensation commissioner December 14, 1943. There is no controversy about any of these matters. The hearing before the compensation commissioner was continued from time to time until January 24, 1945. Prior thereto and on May 29, 1944, claimant filed a written application for additional medical treatment. This application was never specifically ruled upon by the commissioner. On the date of the hearing it was further stipulated:

"That claimant's injury was confined to his left hand and forearm; that the issues herein are (1) extent of claimant's loss of use of his left forearm and hand; (2) amount of compensation due, if any."

The commissioner made an award of compensation for thirteen weeks of temporary total disability followed by twenty-five percent permanent partial disability for 34.25 weeks, making the total compensation allowed $850.50, upon which respondent had credit for the compensation of $108 previously paid. No allowance was

made for additional medical treatment. The award was filed February 8, 1945.

Claimant appealed from the award. The district court, after a hearing, rendered a judgment and award, the journal entry of which, in addition to other pertinent matters, recited that the injuries caused claimant—

". . . to lose a large portion of the skin of his left wrist and left arm, and caused a stiffening of the wrist and left hand, and required that he be treated by a physician therefor. . . . As the result of said injury, claimant bears a large white scar about the area of his left wrist, and also he has sustained a loss of gripping function in his left hand, and is unable to perform a full amount of work by reason of this loss. Claimant has resumed work, and has been employed by the Missouri Pacific Railway Company, since about January, 1944. In addition to an award for compensation, claimant also makes application for additional medical and surgical treatment for said injury to his left arm, left wrist and hand."

Also the court found that respondent had provided medical treatment at a cost of $110 and had paid compensation in the sum of $108. And further found:

"As the result of said accidental injuries, the claimant carries a large and very prominent white scar tissue about the area of his left wrist and arm. Claimant sustains a partial loss of the gripping functions of his left hand, which interferes with the full use of that hand in connection with his work.

"Claimant has a partial, permanent disability of his left hand and forearm, to the extent of 25 percent permanent, partial loss of the use of that member, for the reason that his wrist and arm are stiff, and there is a restriction in the use and movement of said arm and wrist, which is caused by said stiffness."

And concluded:

"Claimant is entitled to further medical and surgical treatment of said arm and wrist, for the purpose of reducing the unsightliness of the prominent scar and scar tissue, which was caused by, and which has resulted from said accidental injuries of September 16th, 1943.

"Claimant is entitled to additional medical and surgical treatment for the purpose of further restoring claimant the normal use of said left wrist and left hand and left arm.

"Claimant is entitled to the above mentioned surgical and medical treatment, not in excess of the sum of $390.00, which, together with the sum of $110.00 heretofore expended by the respondents, in behalf of claimant, makes the total not in excess of the total sum of $500.00.

"In order that claimant may have the benefit of the said medical and surgical treatments, he will have to voluntarily submit himself to such doctor or surgeon as the respondents may designate.

"Claimant is entitled to an award of 25% partial, permanent disability,

subject, however, to further examination and modification of such award, as provided by law."

The judgment was that claimant receive compensation for total disability for thirteen compensable weeks followed by 25 percent permanent partial disability for 48.25 weeks, making a total sum of $994.50 which should be paid claimant, less the $108 previously paid. And further ordered:

"That claimant's application for additional medical treatment be sustained, and that upon claimant's submission to the doctor or physician furnished by the respondents, that he receive such medical and surgical treatment, said treatments to incur an additional expense not to exceed $390.00."

It was further adjudged that the compensation continue for a period of time provided by law, subject to review as provided by law.

Respondent and its insurance carrier have appealed. They do not contend that the court was not justified in allowing claimant thirteen weeks of temporary total disability. They do contend that the evidence did not warrant the finding of additional partial disability. The evidence upon that point, which tends to support the judgment of the court, may be summarized as follows: The claimant (a colored man) testified that he was thirty-six years of age; that he had always worked at farming, railroading, wood or steel mills, sawmills, track work, roundhouse and defense plants; that he had done nothing but hard labor and was not qualified for other work; that his work for the railway company is operating a turntable, in which he runs the motor and gives signals—it is not manual labor; that his left hand is not as strong as it was before his injury; that he can pull himself up on an engine a time or two and then loses his strength; that he can shovel coal with that hand for five or ten minutes and then it gives out; that he has to use his right hand in opening a valve if it is shut off pretty tight; that he tried to grease engines with a grease gun, but was unable to do so; that his injury is about his wrist; that his grip is affected—there is some limitation of the movement of the hand, and sometimes the hand pains him.

Doctor Fairchild, of Osawatomie, testified that in his thirty years practice he had dealt with burns of the character here involved; that he had examined claimant; that the scar completely surrounds the wrist, just above the wrist over the radius and ulna bones, and that the scar tissue extends, to some extent, into the muscles and

tendons; that the full scar is probably ten inches long; that' due to the scar tissue from the burn there is "more or less ankylosis of the joint due to adhesions and lack of motion of the extension of the loss of the tendons of the arm, forearm." He further testified that the injuries are permanent and that in his opinion there is a loss of the use of the wrist and forearm of about thirty-five percent. He further testified that claimant can use his hand as a hook, as when a man picks up the bail of a bucket; he can use it as a ring, as where a ball or round object is grasped between the thumb and forefinger; he can pick up some objects, using his hand as forceps; he has some use of his hand as pliers, as when he picks up a screw or bolt between the fingers and turns it.

Doctor Lowe, of Paola, a general practitioner, who has handled some burn cases, perhaps not exactly like this, testified that he examined claimant twice; that the scar extends six inches above the wrist on the back of the wrist; there is some contraction of the scar just above the wrist; the scar extends around to the midline in front and clear across the front; there is some contraction on the radial side and back of the wrist; that whatever loss of use he has is due to the scar contraction on the back which might give him some pain and partly destroy his grip; that he has some loss of function of the hand on that account, possibly twenty-five percent of the use of the hand as compared to normal.

Doctor Padgett, a plastic surgeon of Kansas City, Mo., testified by deposition that he had examined claimant July 9, 1944, and found that he had a heavy scar over the wrist region on the left hand on the dorsal surface which measured $3\frac{1}{2}$ by 2 inches; there was some thin scar around the undersurface which did not seem to have much contractual tendency; that over the dorsum of the wrist there is a scar which starts about the midpoint of the metacarpus and goes across the wrist and up from the wrist about three inches. In all the scar measures about six inches in length. The lower half of it is heavy and keloidal in nature; the scar encircles the wrist to the inner side and goes around to the ventral surface, where there is a scar extending from the base of the thumb metacarpal about $4\frac{1}{2}$ inches upward in a medial direction; the lower half of the scar is keloidal, which means a heavy hypertrophic scar. Flexion of the wrist is limited, about seventy-five percent of normal, extension limited fifty percent of normal.

We think this evidence ample to support the trial court in finding a twenty-five percent loss of the use of the wrist and arm.

Appellants contend that the court had no authority to make an additional award for medical treatment, for the reason, (1) that the commissioner had made no finding on claimant's application for additional medical attention, hence there was no ruling of the commissioner on that point from which an appeal could be taken. We think the contention lacks merit. The very fact an application was pending before the commissioner, and he made no allowance upon it, is tantamount to a denial of the application. Aside from that, the appeal to the district court took the entire case to the district court that was before the commissioner. The argument of appellants in effect is that only a part of the proceedings before the commissioner was taken to the district court. We think there is no justification for that view. (2) Appellants point out that the trial court did not make a specific finding that this is an "extreme case." (See G. S. 1943 Supp. 44-510 [1]). We find no requirement in the workmen's compensation law for such a specific finding. Under the statute the court is simply required to hear the evidence and to make an award. (G. S. 1935, 44-556; *Thompson v. Swenson Construction Co.,* 158 Kan. 49, 56, 57, 145 P. 2d 166.)

Appellants further contend that the evidence is insufficient to sustain an award for additional medical treatment. Doctor Padgett testified that in his opinion a good skin graft would improve his condition seventy to eighty percent so that claimant would not have more than a possible ten or fifteen percent disability of the wrist, and that it might do better; that a skin graft could be applied after excision of the scar and it would increase the functioning of his wrist probably to nearly normal; that if his skin is grafted claimant would be in the hospital three or four days and could then go home with a splint and dressing on his arm and return in another ten days, at which time the dressing and stitches would be removed; that after another ten days, with a dressing every other day, the arm should be healed if the take of the skin is all right; that the surgical fee would be $150 and the hospital bill about $40. "If the wrist is fixed up I should say that the function of the hand will be okay." What is limited now in function is the pulling which is up above his hand. It is purely a soft tissue limitation due to the contracture of the scar. The deeper structure is not injured. He further testified that such an operation can be performed successfully on claimant, although there are ordinary chances one runs on any operation and no doctor can guarantee results; it is possible not to have a full

take of the skin, but even if you don't have a full take, it could be repeated and get a good result. Doctor Padgett is the only plastic surgeon who gave testimony. It is true that Doctor Fairchild expressed the view that the limited use of plaintiff's hand could not be corrected by a further operation, but he testified that he was not experienced in industrial surgery. More than that, in examining the evidence to see if it is sufficient to sustain the judgment of the trial court we rely only upon that which tends to sustain the judgment.

We find no error in the record. The judgment of the court below is affirmed.